AMERICAN RENAISSANCE LINES, INC., Plaintiff-Appellant,

v.

SAXIS STEAMSHIP CO., Defendant-Appellee,

and

Multifacs International Traders, Inc., Defendant-Appellant.

Nos. 789 and 790, Dockets 73–2484 and 73–2636.

United States Court of Appeals, Second Circuit.

Argued May 6, 1974.

Decided Aug. 5, 1974.

James M. Leonard, New York City (McHugh, Heckman, Smith & Leonard, New York City, on the brief), for plaintiff-appellant.

Harry T. Constas, New York City, for defendant-appellant.

Edwin K. Reid, New York City (Zock, Petrie, Reid, Curtin & Byrnes and Anthony N. Zock, New York City, on the brief), for defendant-appellee.

Before ANDERSON, FEINBERG and MANSFIELD, Circuit Judges.

ROBERT P. ANDERSON, Circuit Judge:

This is the second appeal [1] which has come before this court involving the same parties and arising out of the same charter party between the defendant-appellee and shipowner, Saxis Steamship Co., (Saxis) and Multifacs International Traders, Inc. (Multifacs), defendant-appellant, and the interests acquired in the use of the vessel by American Renaissance Lines, Inc. (Renaissance), the plaintiff-appellant. The facts are fully set forth in this court's opinion on the first appeal and are only briefly summarized here.

Multifacs chartered the vessel, SS Warm Springs, on September 20, 1965, from her owner, Saxis, under the terms of a New York Produce Exchange Time Charter which provided for arbitration

---

1. The opinion and judgment on the first appeal are reported in Saxis Steamship Co. v. Multifacs International Traders, Inc. v. American Renaissance Lines, Inc., 375 F.2d 577 (2 Cir. 1967).

"should any dispute arise between the owners and charterers." On September 23, 1965, Mary Owens, the president of Multifacs, sent Renaissance a letter that purported to assign to Renaissance Multifacs' interest in the charter party.

On its second voyage from Taiwan to Vietnam, the SS Warm Springs could not complete the unloading of all of its cargo in Danang because some of the consignees failed to provide lighterage. Renaissance ordered the captain of the vessel to return to Taiwan, but, under instructions from Saxis, he refused, and the ship remained in the harbor from December 7, 1965 until it was finally unloaded on February 7, 1966.

Because of the immobilization of the ship, the payment of the charter hire was withheld after January 27, 1966. Following the termination of the charter on March 27, Saxis sued Multifacs for $300,795.64 unpaid hire, insurance and wages, and Multifacs counter-claimed for $268,966.42 damages.

In an award issued June 8, 1966, the arbitrators found that Saxis violated the agreement but that its breach did not justify nonpayment of hire, and therefore, both Saxis and Multifacs were liable to each other. The arbitrators held, however, that Saxis could not, under the circumstances, then be required to recompense Multifacs by way of damages or set-off because: the damage had been suffered by Renaissance; "Multifacs and American Renaissance Line [were] two separate corporations"; the charter had been sublet to Renaissance by Multifacs; Multifacs had neither paid damages to Renaissance nor had it become liable for them and "an award of damages by the Panel in this instance would [have amounted] to a windfall to Multifacs."

The district court confirmed the award and, further, barred Renaissance from intervening in the arbitration because, contrary to the arbitrators' finding that Multifacs and Renaissance were separate and distinct corporations, the court found that they were so closely related that Renaissance had, in effect, participated in the arbitration and was bound by its results.

On appeal, this court affirmed the confirmation of the award but reversed "the portion [of the district court's opinion] which bar[red] further action by Renaissance against Saxis." 375 F. 2d at 583. Despite the common ownership and management of Multifacs and Renaissance noted at 583 n.9, this court held:

" . . . [I]t was improper for the district judge to resolve that issue against Renaissance in reliance upon proceedings to which Renaissance was not a party and concerning matters on which Renaissance had never had an opportunity to be heard . . .

Renaissance should not have been barred by the district court from bringing an action against Saxis in an effort to recover damages from it. In such an action Saxis would undoubtedly raise the issues of *res adjudicata* or collateral estoppel on which evidence could be offered by the parties. . . ."

After this court's opinion was filed, Renaissance brought a new action in the Supreme Court of the State of New York, County of New York, and Saxis removed it to the Federal District Court in the Eastern District of New York, where it was assigned to the same district judge who had previously confirmed the arbitrators' award.

Renaissance alleged two alternative causes of action; first, as a subcharterer, it sued Multifacs for the captain's failure to leave Danang, and, in response to this claim, Multifacs admitted its liability to Renaissance and brought a cross-complaint against Saxis. Second, as an assignee, Renaissance sued Saxis for breach of contract. Multifacs counter-claimed against Renaissance to assert a right to set-off whatever damages Renaissance received against those already paid by Multifacs to Saxis.

After Saxis, through interrogatories and depositions, offered proof of the in-

ter-relationship between the two corporations, it moved for summary judgment, claiming that the arbitrators' failure to award damages in favor of Multifacs and against Saxis, was *res adjudicata* against Multifacs and collaterally estopped Renaissance from suing Saxis.

Multifacs and Renaissance likewise moved for summary judgment on the ground that the arbitrators' finding of liability on the part of Saxis to Multifacs was *res adjudicata*.

The district court once again ruled that Renaissance and Multifacs were one and the same, and, therefore, Renaissance "was a substantial participant in the conduct of the arbitration proceedings." It held that in addition to a common ownership and management, Multifacs and Renaissance operated from the same suburban office, reported negligible earnings, and merely served as instruments by which their vice-president, James Georgelis, obtained personal commissions.

The district court concluded: that the doctrine of *res adjudicata* barred Multifacs from again suing Saxis; that Renaissance was estopped from suing Saxis directly under a claim of assignment, because the arbitration had established that the contract between Renaissance and Multifacs was a subcharter; and that Renaissance was equitably estopped from suing Multifacs because Renaissance and Multifacs were identical, and Multifacs could not again sue Saxis.

■ In so holding, the district court misinterpreted the arbitrators' decision and, consequently, misconstrued its *res adjudicata* effect on this action. The arbitrators, in effect, returned special verdicts on the separate issues of liability and damages, Merritt v. Thompson, 27 N.Y. 225, 10 N.Y.S. 276 (Crt of App. 1863). They found that Saxis was a wrongdoer and had breached the charter party, but they did not reach the issues of damages because they found that Multifacs' proof of damages was contingent on the claim of a separate and distinct corporation, Renaissance, which

was not a party to the proceeding. Arbitrators do not have the power to bind a corporation which is not a party to the arbitration contract or a voluntary participant in the arbitration proceeding, Orion Shipping and Trading Co., Inc. v. Eastern States Petroleum Corporation of Panama, S.A., 312 F.2d 299 (2 Cir.), cert. den. 373 U.S. 949, 83 S.Ct. 1679, 10 L.Ed.2d 705 (1963), and the amount of damages to which Renaissance or Multifacs was entitled was, therefore, left undecided.

■ The fact that Multifacs has already established Saxis' liability should not bar Renaissance from now asserting Multifacs' or Saxis' liability, because, as the arbitrators found, and this court confirmed, Multifacs and Renaissance are separate corporations entitled to plead their respective causes of action. See 1B Moore's Federal Practice ¶ 0.401. Nevertheless, the district court, relying entirely on the close connection between Multifacs and Renaissance, contradicted the arbitrators' finding that the two corporations were separate, and through the device of "piercing the corporate veil," ruled that Renaissance was present in the arbitration proceeding, in the person of Multifacs, its alter ego, and, therefore, could not reassert the issue of liability. See Orion Shipping and Trading Co., Inc. v. Eastern States Petroleum Corporation of Panama, S.A., *supra*.

■■ Normally, unless there is "corruption, fraud, or undue means," the actions and affiliations of a party to an arbitration are not grounds for overturning the findings of the arbitrators. 9 U.S.C. § 10(a). Further, absent findings of fraud or bad faith, a corporation, such as Renaissance, is entitled to a presumption of separateness from a sister corporation, such as Multifacs, even if both are owned and controlled by the same individuals. Robertson v. Roy L. Morgan Production Company, 411 F.2d 1041 (10 Cir. 1969); Zubik v. Zubik, 384 F.2d 267 (3 Cir. 1967), cert den. 390 U.S. 988, 88 S.Ct. 1183, 19 L.Ed.2d 1291

(1968); Bankers Life and Casualty Company v. Kirtley, 338 F.2d 1006 (8 Cir. 1964).

If Multifacs had lost the prior action on the issue of liability and Renaissance then brought this action, there might have been grounds for holding that the two corporations were taking advantage of their corporate separateness in order to sue Saxis twice. See Saylor v. Lindsley, 391 F.2d 965 (2 Cir. 1968). There is, however, no indication in the record that Multifacs and Renaissance intended such a result, and, as this court noted in its prior opinion, 375 F.2d at 583, n. 9, common ownership in and of itself is not a sufficient basis on which to deprive a corporation of a cause of action. Renaissance should, therefore, not have been barred from pleading Saxis' or Multifacs' liability. See Brescia Construction Co., Inc. v. Walart Construction Co., Inc., 264 N.Y. 260, 190 N.E. 484 (Crt. of App.1934).

■ Further, the fact that Multifacs prevailed in its prior suit on the issue of liability should not bar its cross-complaint against Saxis on the issue of damages. Birge-Forbes Company v. Heye, 251 U.S. 317, 40 S.Ct. 160, 64 L.Ed. 286 (1920); Restatement of Judgments § 54; Tentative Draft No. 1, New Restatement of Judgments § 48.1(2).

Saxis can demonstrate no compelling " . . . rights or interests established in the first action [which] will be destroyed or impaired by the prosecution of the second." Schuykill Fuel Corporation v. B. & C. Nieberg Realty Corporation, 250 N.Y. 304, 308, 165 N.E. 456, 458 (Crt. of App.1929) (Cardozo, J.). Saxis' maneuvers in these actions have been directed toward the avoidance of paying any damages to anyone, even though the arbitrators found it was a wrongdoer and liable to Multifacs. Under these circumstances, Multifacs' inability to prove damages in the prior action should not bar an attempt to have them ascertained, now that this has become possible. See Lawlor v. National Screen Service Corp., 349 U.S. 322, 75

S.Ct. 865, 99 L.Ed. 1122 (1955); Radick v. Underwriters at Lloyd's London, 137 F.2d 21 (7 Cir. 1943); Fields Holding Co., Inc. v. Chanbrook Realty Co., Inc., 246 App.Div. 241, 285 N.Y.S. 182 (Sprm.Ct.App.Div. 1st Dept. 1936); Clark v. Scoville, 198 N.Y. 279, 91 N.E. 800 (Crt. of App.1910).

■ Ordinarily, "[a] decision by arbitrators is as binding and conclusive . . . as the judgment of a court . . ." James L. Saphier Agency, Inc. v. Green, 190 F.Supp. 713, 719 (S. D.N.Y.1961), aff'd 293 F.2d 769 (2 Cir. 1961), but it is conclusive "only as to those matters included in the submission as to which there has been a hearing, and which are covered by the award." 5 Am.Jur.2d, Arbitration and Award § 147; see Rosa v. Transport Operators Co., 45 N.J.Super. 438, 133 A.2d 24 (Superior Crt. of N.J.App.Div.1957). No award of damages was made in the first proceeding and that issue, therefore, remains open. See De Martini v. Bertram Garden Apartments, Inc., 137 N.Y.S.2d 192 (Sprm.Crt., Special Term Queens Cty. Pt. 1, 1954); De Vries v. Parsons & Whittemore, Inc., 75 N.Y.S.2d 597 (Sprm.Crt., Special Term N.Y.Cty. Pt. 1, 1947).

■ This court in its prior opinion sought to provide Renaissance with an opportunity to recover from Saxis. The court noted in that opinion at 582–583, of 375 F.2d that, before Renaissance could recover, it must establish whether the contract between it and Multifacs was a subcharter or an assignment. The district court again committed error in holding that the arbitrators' finding, that the contract was a subcharter, estopped Renaissance from asserting that the contract was an assignment. "Not having been a party to the earlier action, [Renaissance] is not bound by an adjudication made therein." Flanzbaum v. M & M Transportation Co., 286 F.2d 500 (2 Cir. 1961).

Nevertheless, this court is now of the opinion that there is no need to remand this case to the district court for a de-

termination of whether the contract between Multifacs and Renaissance was an assignment or a subcharter. Saxis has consistently agreed with the arbitrators' finding that the contract was a subcharter; Multifacs has done the same. Although Renaissance pleaded both subcharter and assignment, it moved for summary judgment below and has renewed its motion here on the ground that Saxis is barred from contesting liability by the arbitrators' prior decision; therefore, for purposes of this motion, Renaissance has necessarily conceded the correctness of the arbitrators' finding.

This court may grant summary judgment if there is no dispute as to any material fact, see Local 33, International Hod Carriers Building & Common Laborers' Union of America v. Mason Tenders District Council of Greater New York, 291 F.2d 496 (2 Cir. 1961), and if the moving party is entitled to judgment as a matter of law. Rule 56(c) Fed.R. Civ.Proc.

■ Between Multifacs and Renaissance there is no question of fact, because, for purposes of summary judgment, all parties have agreed that the contract between Multifacs and Renaissance was a subcharter. Renaissance is, therefore, entitled to judgment against Multifacs as a matter of law because Multifacs has made judicial admission of its liability to Renaissance.

■ Aside from damages, the sole remaining question in this suit, then is whether Saxis is liable to Multifacs for breach of the charter. This is, of course, the exact question which the arbitrators decided in favor of Multifacs in the previous suit. Saxis did not challenge the arbitrators' finding of liability in the prior proceeding, and the district court and this court confirmed that award, including the arbitrators' determination of Saxis' liability. "If a suit is brought concerning rights and liabilities that have been decided by a valid arbitration award, the award may be introduced in evidence and is conclusive as to matters contained therein." 5 Am.Jur.2d Arbi-

tration and Awards § 147; see Brazill v. Isham, 12 N.Y. 9 (Crt. of App.1854). The litigation on the issue of liability has, therefore, "reached such a stage that [this] court sees no really good reason for permitting it to be litigated again." Lummus Company v. Commonwealth Oil Refining Company, Inc., 297 F.2d 80, 89 (2 Cir. 1961), cert. den. 368 U.S. 986, 82 S.Ct. 601, 7 L.Ed.2d 524 (1962). See Smith v. United States, 369 F.2d 49 (8 Cir. 1966), cert. den. 386 U.S. 1010, 87 S.Ct. 1355, 18 L.Ed.2d 439 (1967). As between Multifacs and Saxis, the arbitrators' decision on Saxis' liability is *res adjudicata*, and Multifacs is entitled to judgment as a matter of law. Newcomb v. Wood, 97 U.S. 581, 24 L.Ed. 1085 (1878); James L. Saphier Agency, Inc. v. Green, *supra*.

The arbitrators did not calculate precisely the amount of damages owed by Saxis to Multifacs but summary judgment may be entered on the issue of liability alone, even though "there is a genuine issue as to the amount of damages." Rule 56(c). "Because one phase of the litigation was left unsettled . . . does not preclude the holding that the judgment is res adjudicata as to that phase which has been finally concluded." Tuolumne Gold Dredging Corporation v. Walter W. Johnson Co., 71 F.Supp. 111, 113 (N.D.Cal.1947); see Driscoll v. Humble Oil & Refining Company, 60 F. R.D. 230, 234 (S.D.N.Y.1973).

By way of summation in general terms, we conclude that the arbitrators' decision that Multifacs was required to pay over the total charter hire payments to Saxis was *res adjudicata* as to the duty to make the payment of the charter hire at that time, and Multifacs paid it in full; that the same decision also adjudicated liability on the part of Saxis to Multifacs or a person claiming through, by or under Multifacs for Saxis' wrongdoing in depriving Multifacs or its subcharterers or assigns of the use of the vessel and the consequent loss of profits during a substantial part of the life of the charter party, and that this was *res adjudicata* against Saxis. The

arbitrators made independent decisions on two independent issues. The judgment in favor of Saxis for the charter hire was not designed to bar recovery against Saxis for its wrongdoing and consequent liability any more than the finding of wrongdoing and judgment of liability on the part of Saxis was intended to operate to bar Saxis from recovery of the charter hire. The arbitrators made it clear that though damages had been suffered, the case and the parties were in such a posture that, though there was liability on the part of Saxis, the issue of damages could not then be fully ascertained. This is in no sense a modification or vacation of the award by the arbitrators nor does the case come within any of the grounds set out in 9 U.S.C. § 10; rather this decision recognizes that, for an adequate and proper reason, the arbitrators were unable to complete the task assigned to them and were obliged to leave the issue of the amount of the damages unresolved and that it must now be heard and decided.

Multifacs' claim against Saxis for damages is subject to the arbitration provision of the charter agreement, Shanferoke Coal & Supply Corporation of Delaware v. Westchester Service Corporation, 70 F.2d 297 (2 Cir. 1934), aff'd 293 U.S. 449, 55 S.Ct. 313, 79 L. Ed. 583 (1935), and, as Saxis' motion for arbitration on the amount of any damages due is pending below, the district court is directed to grant it and refer this question to arbitration either by the original arbitrators or to another panel chosen in accordance with the applicable provision in the charter party. 9 U.S.C. §§ 2, 4.

It is so ordered.

The grant of summary judgment to Saxis is reversed. The case is remanded to the district court for the entry of summary judgment on the issue of liability in favor of Renaissance against Multifacs and in favor of Multifacs against Saxis. Further proceedings in the district court are ordered stayed pending the determination by arbitration of the amount of any damages.